**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Raymond P. Moore**

Civil Action No. 13–cv–01812–RM-CBS

ZAHOUREK SYSTEMS, INC., and
JON ZAHOUREK,

      Plaintiffs/Counter-Defendants,

v.

BALANCED BODY UNIVERSITY, LLC,

      Defendant/Counter-Plaintiff.

---

**ORDER**

---

    This matter is before the Court on Defendant/Counter-Plaintiff Balanced Body

University, LLC's ("BBU" or "Defendant") (1) motion for partial summary judgment ("MSJ")

(ECF No. 81) and (2) motion to strike ("Motion to Strike") (ECF No. 119) the affidavit of Frank

Baca ("Baca") (ECF No. 102).  Plaintiffs/Counter-Defendants Zahourek Systems, Inc. ("ZSI")

and Jon Zahourek ("Zahourek") (collectively, "Plaintiffs") filed responses to the respective

motions (ECF Nos. 94; 123) and Defendant filed respective replies (ECF Nos. 117; 129).

    At issue in this matter are three trademarks:  (1) "Anatomy in Three Dimensions™"

("Ai3D Mark"); (2) "Anatomy in Three Dimensions an Introduction to Anatomy in Clay™"

("Introduction Mark"); and (3) "Anatomy in Clay™" ("Clay Mark").  (ECF No. 49 ¶ 17.)  At

issue in this matter is a copyright to the Maniken® model[1].  (ECF No. 49 ¶ 19.)  At issue in this matter with respect to Plaintiffs' breach of contract claim is a Product License Agreement[2] ("PLA").  (ECF No. 49 ¶ 21.)   Plaintiffs' unfair competition (ECF No. 49 ¶¶ 61-82) and misappropriation (ECF No. 49 ¶¶ 83-90) claims address Defendants' alleged tortious conduct related to the trademarks and copyrighted material.  Plaintiffs also seek an order directing the United States Patent and Trademark Office ("USPTO") to deny Defendant's notice of opposition to ZSI's registration of the Ai3D Mark.  (ECF No. 49 ¶¶ 91-94.)

Defendant's MSJ "seeks dismissal of Plaintiffs' trademark infringement, breach of contract, copyright, unfair competition and misappropriation claims, and judgment in favor of BBU and against Plaintiffs on the First through Ninth Causes of Action in BBU's Counterclaim. . . ."  (ECF No. 81 at 4.)  Because it was unclear to the Court as to how Defendant's MSJ addressed each of Plaintiffs' claims (with its subclaims related to particular trademarks, copyrighted material, and specific contracts) and advanced support for its Counterclaims, the Court ordered the parties to appear before the Court to address this confusion.  (ECF Nos. 135; 136; 139; 141.)  On March 24, 2016, the Court held a hearing at which it made inquiry with respect to various issues covered by this Order, provided the parties an opportunity to respond to its inquiries, and advised the parties that a written order would follow.  (*See* ECF No. 142.)

For the reasons stated below, the Court (1) GRANTS, in part, Defendant's MSJ, (2) DENIES, in part, Defendant's MSJ, (3) GRANTS, in part, Defendant's Motion to Strike; and (4) DENIES, in part, Defendant's Motion to Strike.

---

[1] During oral argument, Plaintiffs conceded that its copyright claim (ECF No. 49 ¶¶ 53-60) is limited to the Student 1 Maniken®.  (*See* ECF No. 142, Tr. 4-6.)  The Court, for ease of reference, will refer to the Student 1 Maniken® as "Maniken®".

[2] There are three versions of the PLA.  The parties dispute the applicable PLA.  Plaintiffs' state that the breach-of-contract claim is related to the original PLA.  (ECF No. 94 at 11 ("Further, the fact that BBU was under the terms of the PLA since 2009, Plaintiffs assert that all publication and display of BBU's photographs from 2009 are considered a breach of the *agreement*.") (emphasis added).); (*See also* ECF No. 142, Tr. 11).

I.      **LEGAL STANDARDS**

Summary judgment is appropriate only if there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Henderson v. Inter-Chem. Coal Co., Inc.,* 41 F.3d 567, 569-70 (10th Cir. 1994).  "A party seeking summary judgment bears the initial responsibility of informing the district court of the basis for its motion . . . ."  *Robertson v. Bd. of Cty. Comm'rs of the Cty. of Morgan*, 78 F. Supp. 2d 1142, 1146 (D. Colo. 1999) (citation omitted).  Whether there is a genuine dispute as to a material fact depends upon whether the evidence presents a sufficient disagreement to require submission to a jury or is so one–sided that one party must prevail as a matter of law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986); *Stone v. Autoliv ASP, Inc.*, 210 F.3d 1132, 1136 (10th Cir. 2000).  Once the moving party meets its initial burden of demonstrating an absence of a genuine dispute of material fact, the burden then shifts to the non-moving party to move beyond the pleadings and to designate evidence which demonstrates the existence of a genuine dispute of material fact to be resolved at trial.  *See 1-800-Contacts, Inc. v. Lens.com, Inc.,* 722 F.3d 1229, 1242 (10th Cir. 2013) (citation omitted).  A fact is "material" if it pertains to an element of a claim or defense; a factual dispute is "genuine" if the evidence is so contradictory that if the matter went to trial, a reasonable jury could return a verdict for either party.  *Anderson*, 477 U.S. at 248.  In considering whether summary judgment is appropriate, the facts must be considered in a light most favorable to the non-moving party.  *Cillo v. City of Greenwood Vill.*, 739 F.3d 451, 461 (10th Cir. 2013) (citations omitted).

If a movant properly supports a motion for summary judgment, the opposing party may not rest on the allegations contained in his complaint, but must respond with specific facts showing a genuine factual issue for trial.  Fed. R. Civ. P. 56(e); *Scott v. Harris*, 550 U.S. 372,

380 (2007) (holding that "[t]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact") (citation omitted).

The content of evidence must be admissible to be considered when ruling on a motion for summary judgment. *Adams v. Am. Guarantee & Liability Ins. Co.*, 233 F.3d 1242, 1246 (10th Cir. 2000); *Jaramillo v. Colo. Judicial Dep't*, 427 F.3d 1303, 1314 (10th Cir. 2005) (citation omitted) (holding that hearsay evidence is not acceptable in opposing a summary judgment motion); *World of Sleep, Inc. v. La-Z-Boy Chair Co.*, 756 F.2d 1467, 1474 (10th Cir. 1985). Affidavits must be based on personal knowledge and must set forth facts that would be admissible evidence at trial. *Murray v. City of Sapulpa*, 45 F.3d 1417, 1422 (10th Cir. 1995) (quotations and citation omitted). "Conclusory and self-serving affidavits are not sufficient." *Id.* The Court will not consider statements of fact, or rebuttals thereto, which are not material or are not supported by competent evidence. Fed. R. Civ. P. 56(c)(1)(A), 56(e)(2), 56(e)(3). "[O]n a motion for summary judgment, it is the responding party's burden to ensure that the factual dispute is portrayed with particularity, without depending on the trial court to conduct its own search of the record." *Cross v. The Home Depot*, 390 F.3d 1283, 1290 (10th Cir. 2004) (internal quotation and citation omitted). The Court is "not obligated to comb the record in order to make [Plaintiffs'] arguments for [them]." *See Mitchell v. City of Moore, Okla.*, 218 F.3d 1190, 1199 (10th Cir. 2000). Further, Local Rule 7.1(e) provides that "[e]very citation in a motion, response or reply shall include the specific page or statutory subsection to which reference is made." D.C. Colo. L. Civ. R. 7.1(e).

"In order to survive summary judgment, the content of the evidence that the nonmoving party points to must be *admissible*." *Adams*, 233 F.3d at 1246 (alteration in original and citation

omitted).  "The nonmoving party does not have to produce evidence in a form that would be admissible at trial, but '"the content or substance of the evidence must be admissible."'  *Adams*, 233 F.3d at 1246 (citation omitted).  "Evidence presented must be based on more than 'mere speculation, conjecture, or surmise' to defeat a motion for summary judgment."  *Southway v. Cent. Bank of Nigeria*, 149 F. Supp. 2d 1268, 1274 (D. Colo. 2001) (citations omitted).  "Rule 56 expressly prescribes that a summary judgment affidavit must 'be made on personal knowledge, set forth facts that would be admissible in evidence, and show that the affiant is competent to testify on the matters stated.'"  *Johnson v. Weld Cty., Colo.*, 594 F.3d 1202, 1210 (10th Cir. 2010) (citation omitted); *accord* Fed. R. Civ. P. 56(c)(4).  "If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact . . ., the court may: (1) give an opportunity to properly support or address the fact; (2) consider the fact undisputed for purposes of the motion; (3) grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it; or (4) issue any other appropriate order."  Fed. R. Civ. P. 56(e).

## II.   RELEVANT BACKGROUND

### A.   Procedural Background

On July 10, 2013, ZSI filed a petition to compel arbitration against Balanced Body, Inc. (ECF No. 1.)  ZSI's demand to arbitrate described the nature of the dispute as "[b]reach of contract; alternatively, trademark infringement; copyright infringement; unfair competition (multiple bases), misappropriation (multiple bases), deceptive trade practices, misrepresentation, each under various states' laws as applicable; business liability and individual liability for infringement related activities."  (ECF No. 1-2 at 2.)

On August 5, 2013, Balanced Body, Inc. filed a motion to dismiss.  (ECF No. 10.)  On

August 20, 2013, ZSI filed a Verified First Amended Petition to Compel Arbitration against

BBU[3].  (ECF No. 13.)  ZSI's demand to arbitrate described the nature of the dispute as "[b]reach

of contract; alternatively, trademark infringement; copyright infringement; unfair competition

(multiple bases), misappropriation (multiple bases), deceptive trade practices, misrepresentation,

each under various states' laws as applicable; business liability and individual liability for

infringement related activities."  (ECF No. 13-15 at 2.)  On August 26, 2013, BBU moved to

dismiss the Verified First Amended Petition to Compel Arbitration.  (ECF No. 18.)  On July 2,

2014, Magistrate Judge Craig B. Shaffer ordered ZSI to file a complaint and move to withdraw

with prejudice the petition for arbitration with all attendant agreements.  (ECF No. 41.)

With an extension of time, on August 5, 2014, Plaintiffs filed the at-issue Complaint in

this matter.  (ECF Nos. 46; 49.)  On August 26, 2014, Defendant filed its answer to the

complaint and its Counterclaims.  (ECF No. 50.)

On March 6, 2015, Defendant filed a motion for partial summary judgment as described

previously.  (ECF No. 81.)  Defendant raises numerous legal and factual arguments with respect

to Plaintiffs' Complaint.  (*See* ECF No. 81.)  The parties briefed Defendant's MSJ and set forth

the purported undisputed material facts.  (ECF Nos. 94; 117; 118.)  Defendant also moved to

strike Baca's affidavit submitted by Plaintiffs in opposition to Defendant's MSJ.  (ECF No. 119.)

The parties briefed Defendant's Motion to Strike which includes Plaintiffs' supplemental Baca

affidavit[4].  (ECF Nos. 123; 123-2; 129.)

---

[3] The Verified First Amended Petition to Compel Arbitration dropped Balanced Body, Inc. as a defendant.  (ECF
No. 13.)  ZSI did not file a motion to dismiss Balanced Body, Inc. as a defendant.  (*See generally* Dkt.)  By
operation of the Court, Balanced Body, Inc. was terminated as a party to this matter and BBU was added.  (*See* Dkt.)
[4] Plaintiffs did not move to supplement their response brief in opposition to summary judgment with Baca's
Supplemental Confidential Affidavit (ECF No. 123-2).  (*See generally* Dkt.)  Therefore, in addressing Defendant's
MSJ, the Court will not consider Baca's Supplemental Confidential Affidavit which was submitted outside the time

The Court, in reviewing the material submitted in support of and in opposition to Defendant's MSJ, determined that it lacked specificity as to how Defendant's MSJ applied to certain of Plaintiffs' claims (ECF No. 49) and its Counterclaims (ECF No. 50).  Because Defendant's MSJ was titled "Partial," the Court desired clarity as to how its ruling would apply to the parties' claims and what, if any, would remain pending for trial.  For this and other reasons, the Court ordered a hearing at which it discussed various aspects of Defendant's MSJ and invited argument by the parties as to various matters which would impact the parties' claims. (ECF Nos. 135; 136; 139; 141.)  After receiving argument and taking the entire matter under advisement, the Court sets forth this Order.

### B.    Factual Background[5]

The Court sets forth, generally, the undisputed material facts giving rise to the matter. The Court analyzes the potentially materially disputed facts in greater detail in the Analysis section, *infra*.

### 1.    ZSI and Zahourek

This case relates to a technology and products developed by Plaintiffs.  ZSI manufactures and sells models of the human skeleton which are used to teach anatomy.  (*See* ECF No. 82-1, BBU Ex. 1:  Zahourek Dep. 44:3-9; ECF No. 84-15, BBU Ex. 115:  BBU 4359.)  ZSI refers to this model of the human skeleton as Maniken®.  (ECF No. 82-1, BBU Ex. 1:  Zahourek Dep. 30:1-6; *see* ECF No. 83-46, BBU Ex. 96:  ZSI 5791-6901.)  Zahourek "created and developed an innovative system of anatomy study [and] ZSI is dedicated to sharing the power of the ideas that led [him] to build Anatomy in Clay™ and all elements of the system."  (ECF No. 83-10, BBU

---

in which to file a response to Defendant's MSJ and for which Plaintiffs did not receive an extension of time in which to file.
[5] At times, Defendant fails to properly support an asserted statement of fact and Plaintiffs fail to dispute such fact. (*See* ECF No. 118.)  Pursuant to Rule 56(e)(2),  the Court considers such "fact[s] undisputed for purposes of the motion."  Fed. R. Civ. P. 56(e)(2).

Ex. 60:  BBU 3520.)  At various times, Zahourek used the term "Anatomy in Clay Learning System" and he also used the term "Maniken Learning System."  (ECF No. 82-1, BBU Ex. 1: Zahourek Dep. 49:19-25, 50:1-3.)

    a.    *The Maniken®*

When Zahourek designed the first Maniken®, his intent was to make a three-dimensional model that would be usable to study on by using clay and strings or other representation of anatomy.  (ECF No. 82-1, BBU Ex. 1:  Zahourek Dep. 31:6-13, 33:17-18, 40:2-16, 47:6-8, 47:24-25, 48:1-6.)  Maniken® is an interactive learning tool which requires the user to shape muscles of clay and attach them to the model.  (ECF No. 84-4, BBU Ex. 104:  ZSI 0873.)  The Maniken® is a useful model of skeletal ideas whose overriding intention was to provide a meaningful armature upon which one could explore muscular ideas.  (ECF No. 84-7, BBU Ex. 107, ZSI 3194.)  Zahourek obtained copyright registrations for the Maniken System® in 1977 and for a revision of the text in 1981.  (ECF No. 83-49, BBU Ex. 99: ZSI 4561-62, 3075, 3088.)  The first "manikin" was registered for copyright as a "statue" under the name "Maniken" on July 10, 1981, with a first publication date of June 23, 1981.  (ECF No. 83-50, BBU Ex. 100:  BBU 3753; ECF No. 82-1, BBU Ex. 1:  Zahourek Dep. 45:5-11.)  The first Maniken® came in a kit that included clays and tools, wires for vascular and neural networks and reference tests.  (ECF No. 84-4, BBU Ex. 104:  ZSI 0873.)  ZSI sells Manikens®, including the Student 1 Maniken® as part of a kit that includes hardware for assembly, a basic tool set, a package of reusable clay, and the Anatomy in Clay Learning Activities booklet.  (ECF No. 84-10, BBU Ex. 110:  ZSI 1668-1693; ECF No. 84-14, BBU Ex. 114:  BBU 4357; ECF No. 84-17, BBU Ex. 117:  ZSI 1642, 1658.)  The Maniken® is 40% of life-size and stands in the standard anatomical pose.  (ECF No. 84-1, BBU Ex. 101:  ZSI 1629, 1639, 4357.)  The Maniken® is small enough to be

used by one person but large enough to accommodate tendons made of clay.  (ECF No. 84-5, BBU Ex. 105:  ZSI 0938.)  Over the years, Zahourek made changes in the Mainkens® to make them more life-like and to produce more zoological ideas into them.  (ECF No. 82-1, BBU Ex. 1, Zahourek Dep. 42:11-19, 42:20-24, 192:1-5.)

b.    *Certain of the Marks and Zahourek's Copyright*

On October 18, 2011, ZSI's website did not list the Ai3D or Introduction Mark among the trademarks claimed by ZSI.  (ECF No. 83-44, BBU Ex. 94:  BBU 4025.)

Until it filed trademark applications on May 25, 2012, ZSI never claimed in writing to own the Ai3D or Introduction Mark.  (*See* ECF No. 118 ¶ 59.)  Zahourek never communicated to BBU that he believed that ZSI owned the Ai3D Mark.  (ECF No. 82-1, BBU Ex. 1:  Zahourek Dep. 120:25-121:8.)

On May 25, 2012, ZSI filed for registration of the Introduction Mark.  (ECF No. 83-32, BBU Ex. 82:  BBU 3629-3636.)  In its Introduction Mark application, ZSI declared that the mark was first used in commerce by "applicant or the applicant's related company or licensee or predecessor in interest at least as early as 12/11/2004 . . . and is now in use in such commerce" for services in International Class 41.  (ECF No. 83-32, BBU Ex. 82:  BBU 3629.)  ZSI further declared in the Introduction Mark application that the "[u]se of the mark is by a licensee, which use inures to the benefit of Applicant."  (ECF No. 83-32, BBU Ex. 82:  BBU 3630.)  When ZSI declared in the Introduction Mark application that the "use of the mark is by a licensee," ZSI was referring to BBU.  (ECF No. 82-2, BBU Ex. 2:  V. Zahourek Dep. 234:7-25, 235:1-25, 236:1-2.)  Further, ZSI declared that the licensee might be adverse.  (ECF No. 83-32, BBU Ex. 82:  BBU 3630.)  The USPTO registered the Introduction Mark on January 22, 2013.  (ECF No. 83-32, BBU Ex. 82:  BBU 3615.)

On May 25, 2012, ZSI filed for registration of the Ai3D Mark.  (ECF No. 83-33, BBU Ex. 83:  BBU 3694-3696.)  The Ai3D Mark was filed on the basis of a bona fide intent to use the mark.  (ECF No. 83-33, BBU Ex. 83:  BBU 3694.)  In its Ai3D Mark application, ZSI declared that the "[i]nitial use of the mark will be by a licensee, which inures to the benefit of Applicant." (ECF No. 83-33, BBU Ex. 83:  BBU 3694.)  When ZSI declared in the Ai3D Mark application that the "[i]nitial use of the mark will be by a licensee," ZSI was referring to BBU.  (*See* ECF No. 82-2, BBU Ex. 2:  V. Zahourek Dep. 234:7-25, 235:1-25, 236:1-2.)  Further, ZSI declared that the licensee might be adverse.  (ECF No. 83-33, BBU Ex. 83:  BBU 3694.)  At the time ZSI filed its application for the Ai3D Mark, ZSI had no plans or intent to use the Ai3D Mark in any class of goods or services.  (ECF No. 82-2, BBU Ex. 2:  V. Zahourek Dep. pp. 244-249.)[6]  ZSI subsequently amended its Ai3D Mark application.  (ECF No. 83-33, BBU Ex. 83:  BBU 3667-3669.)  On March 26, 2013, the USPTO registered the Ai3D Mark covering services in Class 41. (ECF No. 83-33, BBU Ex. 83:  BBU 3642.)  Zahourek knows of no license agreement between ZSI and BBU with respect to the Ai3D Mark.  (ECF No. 82-1, BBU Ex. 1:  Zahourek Dep. 112:9-24, 116:18-22.)

Zahourek is the owner of the Clay Mark and Maniken® copyright.  (ECF No. 118 ¶ 122.) The trademark license between Zahourek and ZSI does not grant ZSI the right to sue third parties for infringement of the Clay Mark.  (ECF No. 84-22, BBU Ex. 122:  ZSI 5997-5999.)

2.   BBU

BBU provides educational services in the field of exercise and movement, including pilates.  (*See* ECF No. 82-13, BBU Ex. 13:  BBU 1869-1870.)

---

[6] Plaintiffs attempt to dispute this fact by asserting that "Jon was chomping at the bit to use it."  (*See* ECF No. 118 ¶ 88 (citing ECF No. 123-1, Pls.' Ex. CC.)  Plaintiffs' Exhibit CC is a sixteen page document.  The Court was unable to locate the statement within it.  Further, Zahourek and ZSI are not the same entities.  Thus, Plaintiffs fail to raise a disputed material fact with respect to ZSI's lack of bona fide intent to use the Ai3D Mark.

3.    The Parties' Relationship

In 2004, BBU decided to hold 2-day workshops using certain of Plaintiffs' materials during BBU's Pilates on Tour program.  (ECF No. 82-13, BBU Ex. 13:  BBU 1869-1870.) Thereafter, a BBU representative identified that during these 2-day workshops, BBU would use ZSI Manikens® and call the workshops "Anatomy in Three Dimensions-An Introduction to Anatomy with Anatomy in Clay."  (*See* ECF No. 82-13, BBU Ex. 13:  BBU 1869-1870.)  In late 2004, after seeking ZSI's review and approval, BBU began using ZSI's Clay Mark, Maniken™, and Introduction Mark.  (ECF No. 82-12, BBU Ex. 12:  ZSI 0461-0462; ECF No. 82-15, BBU Ex. 15:  ZSI 0089; ECF No. 82-16, BBU Ex. 16:  ZSI 0451; ECF No. 82-17, BBU Ex. 17:  ZSI 0436-0437; ECF No. 82-18, BBU Ex. 18:  ZSI 0063-0064; ECF No. 82-19, BBU Ex. 19:  ZSI 0452-0456.)  BBU proposed that Zahourek teach a 5-day course for BBU.  (ECF No. 82-22, BBU Ex. 22:  ZSI 0439.)  When a representative from BBU and Zahourek "first agreed to work together . . . [they] created a secondary trademark called Anatomy in Three Dimensions [("Ai3D")] and a subtitle of that trademark was An Introduction to Anatomy in Clay."  (ECF No. 82-1, BBU Ex. 1:  Zahourek Dep. 106:8-20.)  Zahourek and a representative from BBU team-taught a workshop for a number of years called Anatomy in Three Dimensions:  An Introduction Anatomy in Clay with Zahourek's permission.  (ECF No. 82-1, BBU Ex. 1:  Zahourek Dep. 106:8-20.)[7]

On April 15, 2005, ZSI and BBU entered into an agreement ("AiC Web Store Agreement") whereby BBU would establish an internet store that would sell select ZSI products. (ECF No. 112, Pls.' Ex. C.)  ZSI and BBU did not enter into the AiC Web Store Agreement until ZSI's trademarks were correctly identified on BBU's website and after ZSI requested that BBU

---

[7] Defendant asserts that there is no *documentary* evidence supporting Zahourek's testimony.  (*See* ECF No. 118 ¶¶ 14-16.)  The Court construes this disputed fact in favor of the non-movants.

correct its website to show ZSI's Clay Mark.  (ECF No. 82-25, BBU Ex. 25, ZSI 0043-0044.)  In 2005, BBU used various unregistered ZSI "design logos"[8] with ZSI's approval.  (ECF No. 118 ¶ 23; ECF No. 82-29, BBU Ex. 29:  BBU 3406; ECF No. 82-31, BBU Ex. 31:  BBU 3395, 3397, 3398, 3399, 3404.)

In 2007, Zahourek handed a BBU representative a proposed licensing agreement ("2007 Proposal") for the Clay Mark, Maniken™, and Mylogik™ together with trademark and copyright usage instructions.  (ECF No. 82-1, BBU Ex. 1:  Zahourek Dep. 131:11-25, 132:1-24; ECF No. 83-10, BBU Ex. 60:  BBU 3509-3537.)  The 2007 Proposal included a letter from Zahourek in which he provided a list of the "Current trademarks," both registered and unregistered, that ZSI protects which does not list the Ai3D Mark.  (ECF No. 83-10, BBU Ex. 60:  BBU 3520.)  BBU did not accept the 2007 Proposal.  (ECF No. 82-1, BBU Ex. 1:  Zahourek Dep. 155:1-4.)

In 2009, ZSI contacted BBU to request that certain changes be made to BBU's use of ZSI's Clay Mark and Maniken™ on BBU's website.  (ECF No. 83-11, BBU Ex. 61:  ZSI 0768-0774; ECF No. 83-13, BBU Ex. 63:  ZSI 0746.)

After April 2009, ZSI quotes and invoices included notice of a PLA.  (ECF No. 99-2, Pls. Ex. Q:  BBU 274, 278, 1182, 3158, 3166.)

Until 2012, BBU publicized the Clay Mark and the Anatomy in Clay Learning System on its website.  (ECF No. 82-40, BBU Ex. 40:  BBU 4349; ECF No. 82-4, BBU Ex. 4:  St. John Dep. 63:5-25, 66:1-7, 66:20-23, 67:5-23, 68:7-21; ECF No. 105, Pls.' Ex. G:  ZSI 0007-0010.) From October 2004 until September 2011, BBU used the Ai3D Mark as the designation for its courses using Maniken®.  (ECF No. 118 ¶ 28.)

---

[8] It is not clear to what "design logos" refers.

ZSI does not currently offer in-depth anatomy classes using the Anatomy in Clay™ system.  (ECF No. 82-3, BBU Ex. 3:  Baca Dep:  74:12-25, 75:1-14, 76:16-25, 77:1-25, 78:1-9.)  In the workshop market, ZSI and BBU are not competitors.  (ECF No. 82-3, BBU Ex. 3:  Baca Dep. 88:1-25, 89:1-19, 91:20-25, 92:1-25, 93:1-3.)

       a.    *The PLAs*

BBU purchased and paid for products from ZSI over the phone or by e-mail.  (ECF No. 83-35, BBU Ex. 85:  ZSI 1388, 1390, 1391; ECF No. 82-5, BBU Ex. 5:  Saenz Dep. 18:14-25, 19:1-22.)  Between January 1, 2005 and October 9, 2008, ZSI issued 39 invoices to BBU.  (ECF No. 83-36, BBU Ex. 86:  ZSI 1434-1436.)  ZSI issued zero invoices to BBU in 2009, 6 invoices in 2010, 3 in 2011, and 3 in 2012.  (ECF No. 83-36, BBU Ex. 86:  ZSI 1434-1436.)  From 2010 through 2013, ZSI's invoices contained print at the bottom stating that "Zahourek Systems, Inc. sells products and services only with associated Product License rights.  Before you can purchase the item(s), you must read and accept the terms for the associated Product License found at www.anatomyinclay.com/licenserights.html.  Payment for the item(s) represents that you have read, understood, and accept the Product License [("PLA")] terms."  (ECF No. 118 ¶ 112; ECF No. 83-38, BBU Ex. 88:  ZSI 1376, 1483.)

ZSI implemented the first PLA in April 2009.  (ECF No. 82-2, BBU Ex. 2:  V. Zahourek Dep. 59:24-25; ECF No. 83-39, BBU Ex. 89:  4081-4083, 4084-4086, 4087-4089, 4090-4092.)  In September 2011, ZSI posted on its website a revised version of the PLA dated June 1, 2011 ("First Revised PLA").  (ECF No. 118 ¶ 115; ECF No. 83-40, BBU Ex. 90:  BBU 4023-4024, 4164-4165.)  On or about July 23, 2013, ZSI posted another revised version of the PLA ("Second Revised PLA").  (ECF No. 118 ¶ 116; ECF No. 83-41, BBU Ex. 91:  BBU 4176-4177.)

On certain dates from April 2009 until October 18, 2011, the web page referred to in ZSI's invoices, *licenserights.html*, did not show the PLA and did not contain any visible hyperlink to the PLA.  (ECF No. 83-42, BBU Ex. 92:  BBU 4093-4096, 4069-4070, 4178; ECF No. 82-2, BBU Ex. 2:  V. Zahourek Dep. 111:21-25, 112:1-8, 112:22-25, 113:1-18, 114:24-25, 115:1-12; ECF No. 102, Pls.' Ex. AA:  Baca Aff. ¶ 2.)  On certain dates from April 2009 until June 2011, the web page referred to in ZSI's invoices, *licenserights.html*, displayed a table headed "List of Associated Intellectual Property Under the Produce License Agreement" which showed the Maniken™ and Clay Mark as "Corollary Trademarks" for "Maniken Models" and "Maniken Replacement Parts."  (ECF No. 83-42, BBU Ex. 92:  BBU 4093-4096, 4069-4070, 4178; ECF No. 82-2, BBU Ex. 2:  V. Zahourek Dep. 111:21-15, 112:1-8, 112:22-25, 113:1-18, 114:24-25, 115:1-12; ECF No. 102, Pls.' Ex. AA:  Baca Aff. ¶ 2.)  From approximately June 1, 2011 until September 2011, ZSI's website was offline with a placeholder stating "Check back soon as the site is being redesigned."  (ECF No. 118 ¶ 119; ECF No. 83-43, BBU Ex. 93:  4068-4070.)  On certain dates from when ZSI's website came back online in September 2011 until October 18, 2011, the web page referred to in ZSI's invoices, *licenserights.html*, resolved to a "404 Error," *i.e.*, the page was not found and there was no visible reference on that page to the First Revised PLA.  (ECF No. 83-42, BBU Ex. 92:  BBU 4178; ECF No. 82-3, BBU Ex. 3:  Baca Dep. 220:4-8; ECF No. 102, Pls.' Ex. AA:  Baca Aff. ¶ 2; ECF No. 118-3, BBU Ex. 129:  Baca Dep. pp. 209-220.)

Paragraph 2 of the PLA acknowledges that the purchaser owns the products purchased from ZSI.  (ECF No. 83-39, BBU Ex. 89:  BBU 4081, 4087, 4090, 4023, 4164, 4172.)  Paragraph 5 of the PLA states "[i]n consideration of payment of the license fee, which is part of the purchase price for the Product, [ZSI] grants to You a personal, non-exclusive, non-

assignable, worldwide and royalty-free license to use the Associated Intellectual Property on the terms and conditions explained in this Agreement.  These rights are rescindable by [ZSI] without notice at [ZSI]'s sole discretion."  (ECF No. 83-39, BBU Ex. 89:  BBU 4081, 4087, 4090, 4023, 4164, 4172.)  In the PLA and First Revised PLA, "Associated Intellectual Property" is defined in paragraph 4 as "only those specific trademarks and/or copyrights associated with your Product and which may be used under the terms of this agreement."  (ECF No. 83-39, BBU Ex. 89:  BBU 4081, 4087, 4090, 4023, 4164; ECF No. 118 ¶ 127.)  Depending on the product, the corollary rights differed.  (ECF No. 83-45, BBU Ex. 95:  BBU 4047, 4027.)  The phrase "as may be updated from time to time" in paragraphs 1, 4, 6, and 7 of the PLA gave ZSI the ability to change the PLA's terms by adding to the list of claimed trademarks or copyrights or changing ZSI's usage policies, thereby purportedly obligating the purchaser to terms that did not exist at the time of purchase.  (ECF No. 83-39, BBU Ex. 89:  BBU 4081-4082, 4087-4088, 4090-4091, 4023, 4164.)  Paragraph 13 of the PLA, First Revised PLA, and Second Revised PLA, all contain an assertion that each "supersedes any prior versions."  (ECF No. 83-39, BBU Ex. 89:  BBU 4083, 4086, 4089; ECF No. 83-40, BBU Ex. 90:  BBU 4024; ECF No. 83-41, BBU Ex. 91: 4177.)

On October 10, 2011, Balanced Body Inc.'s counsel sent ZSI's counsel a letter disclaiming all obligations under ZSI's PLA and stated that Balanced Body, Inc. will no longer use ZSI's trademarks.  (ECF No. 83-27, BBU Ex. 77:  BBU 1217; *see* ECF No. 118 ¶ 68.)

b.    *Product License Negotiations*

From 2010 until March 2011, ZSI and BBU attempted to negotiate an agreement by which ZSI would license to BBU its trademarks (Clay Mark and Mainken™).  (ECF No. 83-15, BBU Ex. 65:  BBU 1488; ECF No. 83-16, BBU Ex. 66:  BBU 1448-1450; ECF No. 83-17, BBU Ex. 67:  BBU 1393; ECF No. 83-18, BBU Ex. 68:  ZSI 0555-0556; ECF No. 83-19, BBU Ex.

69: ZSI 0606-0615.) In July 2010, ZSI sent BBU a draft of its proposed "Standard Commercial License Agreement Level 3" ("2010 Proposed Agreement") in which it proposed to license the ZSI trademarks Clay Mark, Maniken™, and Myologik™. (ECF No. 83-20, BBU Ex. 70: ZSI 0511, 0513-0518.) In September 2010, ZSI sent BBU two documents titled (1) "Acknowledgment by Instructors of Zahourek Intellectual Property Rights" (the "Acknowledgment") which was to be signed by all of BBU's instructors; and (2) "Student Handout/Zahourek Systems, Inc. Intellectual Property Notice" ("Student Handout") which was to be handed out to all of BBU's students. (ECF No. 83-18, BBU Ex. 68: ZSI 0555-0556; ECF No. 99, Pls.' Ex. O: ZSI 0555-0556.) The Acknowledgment and Student Handout list 4 registered and 27 unregistered marks claimed by ZSI but the Ai3D Mark is not among them. (ECF No. 83-18, BBU Ex. 68: ZSI 0555-0556.) The parties never entered into the 2010 Proposed Agreement. (*See* ECF No. 118 ¶ 52.)

> c. *Alleged Infringing Conduct*

The "Anatomy in Three Dimensions Build Manual and Resource Guide" ("Build Manual"), first published by BBU in 2012, consists of 85 pages, with approximately 100 photographs taken by BBU on 40 pages that show the application of clay to the Student 1 Maniken® that BBU purchased in 2005 or 2006. (ECF No. 118 ¶ 200; ECF No. 84-26, BBU Ex. 126: ZSI 2553-2638; ECF No. 82-4, BBU Ex. 4, St. John Dep. 24:6-15, 158:4-7.) The Build Manual depicts a limited number of body parts of the Maniken® and illustrates the application of a limited number of clay "muscles." (ECF No. 84-26, BBU Ex. 126: ZSI 2553-2638.) The Build Manual is used in BBU's Anatomy in Three Dimensions courses for students to refer to and sometimes the Build Manual is given to students to take home. (ECF No. 82-4, BBU Ex. 4: St. John Dep. 21:19-25, 22:1-8, 120:19-25, 121:1-7.) The Build Manual was created by a BBU

employee to show students how to build the muscles on the Maniken®.  (ECF No. 82-4, BBU

Ex. 4:  St. John. Dep. 40:12-16.)  Zahourek had a requirement that required BBU to refrain from

using photos of the Maniken® in the Build Manual.  (ECF No. 82-4, BBU Ex. 4:  St. John. Dep.

40:9-25, 41:1-3.)

## III.   ANALYSIS[9]

The Court first proceeds with analyzing Defendant's Motion to Strike (ECF No. 119)

because if certain facts set forth in Baca's Affidavit (ECF No. 102, Pls.' Ex. AA) are admissible

in adjudicating Defendant's MSJ, then those facts could create a disputed material fact sufficient

to deny Defendant's MSJ.

### A.    Defendant's Motion to Strike Baca's Affidavit

Baca is the current "COO" and "president" of ZSI.  (ECF No. 102, Pls.' Ex. AA:  Baca.

Aff. ¶ 1.)  Defendant moves to strike Baca's Affidavit (ECF No. 102, Pls.' Ex. AA) on the bases

that it "(1) does not set forth facts that would be admissible in evidence, but rather contains

hearsay, conclusory allegations, improper opinion, legal arguments, statements that could not

plausibly be premised on personal knowledge, and statements that are too vague and unsupported

to be useful; (2) contradicts [Baca's] sworn deposition testimony; and (3) contradicts the

testimony of [ZSI's] Rule 30(b)(6) corporate designees and other witnesses."  (ECF No. 119 at

2.)  Plaintiffs respond that Baca's Affidavit is "made on the personal knowledge of the

---

[9] The Court notes several deficiencies in Plaintiffs' filings.  First, Plaintiffs' filings, with respect to exhibits submitted in opposition to Defendant's MSJ, are not in an organized fashion.  (*See generally* ECF Nos. 95-112.)  Second, Plaintiffs' response brief to Defendant's MSJ does not cite to the statement of facts as instructed under the Court's Civil Practice Standards but rather cites to the underlying exhibits.  (*See* ECF No. 94.)  Third, Plaintiffs' response brief's cites to the exhibits are often without pinpoint citation as required under the Court's Civil Practice Standards and Local Rules of Civil Procedure.  These deficiencies have made the Court's review of the record exceedingly difficult.  It is not the Court's obligation to identify factual support or construct legal arguments for Plaintiffs.  *Dayton Hudson Corp. v. Macerich Real Estate Co.*, 812 F.2d 1319, 1325 (10th Cir. 1987) (citations omitted) (holding that "[o]nce a party moving for summary judgment has met his initial burden, the party resisting the motion cannot rest on his pleadings" but rather the party opposing the motion must inform the trial judge of the reasons, legal or factual, why summary judgment should not be entered).

corporation of which he is the designated spokesman, sets out facts that would be admissible in evidence, and shows that [Baca] is competent to testify on behalf of the corporation relative to the matters stated." (ECF No. 123 at 2.)  The Court grants, in part, and denies, in part, Defendant's Motion to Strike as set forth below.

As stated previously, affidavits must be based on personal knowledge and must set forth facts that would be admissible evidence at trial.  *Murray*, 45 F.3d at 1422 (quotations and citation omitted).  Baca's affidavit states that the facts set forth in the affidavit "are true and correct to the best of [his] knowledge and belief. . . ." (ECF No. 102 at 2.)  Thus, contrary to Defendant's assertion, Baca's affidavit is based upon his personal "knowledge" with respect to certain statements.

Baca's affidavit sets forth that he has been a ZSI employee for 22 years and is familiar with its business during those years, including that at issue in this matter.  (*See* ECF No. 102 at 2, Pls.' Ex. AA:  Baca Aff. ¶ 1.)  Although not set forth in the affidavit, it is clear that Baca was responsible for the corporate website from 1996 until March 2012.  (ECF No. 119-2, BBU Ex. 132:  Baca Dep. 49:7-25.)  Thus, contrary to Defendant's argument, the statements in Baca's affidavit with respect to ZSI's corporate website (ECF No. 102, Pls.' Ex. AA:  Baca Aff. ¶¶ 2-3), including the webpage http://anatomyinclay.com/licenserights.html, are based upon personal knowledge and he is competent to testify as to such matters.  Further, although these statements may contradict the deposition testimony of V. Zahourek, Defendant fails to show how these statements contradict *in all respects* Baca's deposition testimony because the deposition testimony refers to *select dates* (ECF No. 129-4, BBU Ex. 138:  Baca Dep. 208:21-25, pp. 209-220) while the affidavit refers to the period "around 2010 to present" at "all times relevant herein" (ECF No. 102, Pls.' Ex. AA:  Baca Aff. ¶ 2).  Thus, the Court construes Baca's affidavit

as consistent with those dates other than as identified in his deposition testimony.  With respect to Defendant's argument that ZSI's website was offline (ECF No. 119 at 5), Defendant fails to be specific with regard to the particular webpage identified in Baca's affidavit (ECF No. 102, Pls.' Ex. AA:  Baca Aff. ¶ 2).  The Court agrees that the attachments (ECF No. 102 at 5-11, Pls.' Ex. AA) do contradict Baca's deposition testimony (ECF No. 129-4, Baca Dep. 208:21-25, pp. 209-220), thus the Court disregards those attachments in its analysis.

Defendant's argument (ECF No. 119 at 6-8) that Plaintiffs' reliance on the remaining statements in Baca's affidavit (ECF No. 123 at 3 (citing ECF No. 102, Pls.' Ex. AA:  Baca Aff. ¶¶ 4-12)) as being without sufficient personal knowledge is well-taken.  Baca's statement with respect to Judge Babcock's order (ECF No. 102, Pls.' Ex. AA:  Baca Aff. ¶ 4) is a legal conclusion.  Baca's statement with respect to the verbal license agreement (ECF No. 102, Pls.' Ex. AA:  Baca Aff. ¶ 5) is without sufficient evidentiary support to indicate how he has such personal knowledge.  Plaintiffs' citation to Baca's deposition testimony (ECF No. 119-2, BBU Ex. 132:  Baca. Dep. 49:7-25; ECF No. 123-3, Pls.' Ex. EE:  Baca Dep. 32:17-23) fails to provide support as to when and to what extent Baca's job duties expanded to include knowledge of licensing agreements.  Similarly, Baca's remaining statements (ECF No. 102, Pls.' Ex. AA:  Baca Aff. ¶¶ 6-12) are without sufficient evidentiary support to indicate how he has personal knowledge as to the statements attested.  Other than in a conclusory fashion, Plaintiffs fail to explain what duties are parts of Baca's "COO" title.  Further, Baca's statements as to ZSI's market performance are speculative.  (ECF No. 102, Pls.' Ex. AA:  Baca Aff. ¶¶ 7-12.)

For these reasons, the Court strikes statements four through twelve of Baca's affidavit (ECF No. 102, Pls.' Ex. AA:  Baca Aff. ¶¶ 4-12).  The Court does not strike statements one

through three of Baca's affidavit (ECF No. 102, Pls.' Ex. AA:  Baca Aff. ¶¶ 1-3) but disregards the attachments.

**B.      Defendant's Motion for Partial Summary Judgment**

The Court considers arguments Defendant raises in its MSJ (ECF No. 81).  Because of the oblique manner in which Plaintiffs' Complaint raises their claims, the Court, at times, has to decide which party is permitted to bring certain claims, and how the claims apply to certain of Plaintiffs' trademarks or copyright materials.

1.      <u>Trademark Claim</u>

For the following reasons, the Court grants judgment to (1) Defendant as to Plaintiffs' trademark claim with respect to the Ai3D Mark; and (2) Defendant as to Plaintiff ZSI's trademark claim with respect to the Clay Mark.  The Court denies judgment to (1) Defendant as to Plaintiffs' trademark claim with respect to the Introduction Mark; and (2) Defendant as to Zahourek's trademark claim with respect to the Clay Mark.

a.      *Anatomy in Three Dimensions*

(1)      Whether ZSI's Registration of the Ai3D Mark is Void Ab Initio Because of a Lack of Intent to Use the Mark

"The registration of a mark that does not meet the use requirement is void ab initio." *Aycock Eng'g, Inc. v. Airflite, Inc.*, 560 F.3d 1350, 1357 (Fed. Cir. 2009) (citations omitted); *see* 15 U.S.C. §§ 1051(a)(1), 1127.  Defendant argues that ZSI's registration of the Ai3D Mark is void ab initio because ZSI did not have a bona fide intent to use the Ai3D Mark when it filed its application.  (ECF No. 81 at 7-8.)  Defendant argues that ZSI had no plan or intent to use the Ai3D Mark when it submitted its application.  (ECF No. 82-2, BBU Ex. 2:  V. Zahourek Dep. 244:22-25, pp. 245-249.)  Plaintiffs argue that ZSI had licensed the Ai3D Mark to BBU;

however, Plaintiffs fail to cite to specific evidence in the record[10].  (*See* ECF No. 94 at 3, 5 (citing ECF No. 101-3, Pls.' Ex. Z).)  Specifically, the statement "Anatomy in Three Dimensions:  The Next Step! From Zahourek Systems" does not evidence a license of the Ai3D Mark from ZSI to BBU.  Further, Plaintiffs' citation is to an internal e-mail (ECF No. 101-3, Pls.' Ex. Z:  BBU 1047), thus it is not clear whether the Ai3D Mark was intended to be used in commerce.  And Plaintiffs' additional citations to the record purporting to show that ZSI had intent to use the Ai3D Mark, *at the time it filed its registration*, are without pinpoint citation. (ECF No. 94 at 5 (citing ECF No. 101-2, Pls.' Ex. Y (a 6 page exhibit) and ECF No. 83-44, BBU Ex. 94:  BBU 4183 and ECF No. 82-2, BBU Ex. 2 (a 50 page exhibit); ECF No. 84-26, BBU Ex. 126[11]).)  Further, Plaintiffs' argument (without pinpoint record citation) that Zahourek was "chomping at the bit" to use the Ai3D Mark (ECF No. 94 at 5) does not identify that the registrant of the Ai3D Mark, *i.e.*, ZSI, was going to use the Ai3D Mark.

"[A]bsence of any documentary evidence on the part of an applicant regarding [a bona fide intent to use the mark] constitutes objective proof sufficient to prove that the applicant lacks a bona fide intention to use its mark in commerce." *Boston Red Sox Baseball Club LP v. Sherman*, 88 USPQ2D 1581, *6 (TTAB 2008).

The Court agrees that ZSI lacked a bona fide intent to use the Ai3D Mark.

---

[10] Plaintiffs simply ask the Court to "see disputes to the Statements of Facts." (ECF No. 94 at 3.)  This is a recurring theme throughout Plaintiffs' brief and response to statement of facts.  The Court is not going to comb through the record to identify factual support for Plaintiffs' position.  *See Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 672 (10th Cir. 1998) (citations omitted).  It is not the responsibility of the Court to behave "like pigs, hunting for truffles buried in briefs."  *See United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991).

[11] The Build Manual states that it is copyrighted in 2012.  Plaintiffs fail to adduce evidence that show that it filed the Ai3D Mark application prior to BBU's publication of the Build Manual.

b.    *Anatomy in Three Dimensions an Introduction to Anatomy in Clay*

(1)    Whether ZSI's Registration of the Introduction Mark is Void Ab Initio Because It was Not in Use at the Time It was Filed

Defendant argues that ZSI's registration of the Introduction Mark is void ab initio because it was not in use at the time ZSI filed the Introduction Mark application.  (ECF No. 81 at 6-7.)  Defendant argues that ZSI *knew* that BBU had ceased using the Introduction Mark at the time ZSI filed its Introduction Mark application.  (ECF No. 81 at 7.)

"The registration of a mark that does not meet the use requirement is void ab initio." *Aycock Eng'g,*, 560 F.3d at 1357 (citations omitted); *see* 15 U.S.C. §§ 1051(a)(1), 1127.  Here, there exists an identifiable, genuine factual dispute as to ZSI's knowledge as to whether BBU was still using the Introduction Mark.  Defendant's citations to the record   (ECF No. 82-2, BBU Ex 2:  V. Zahourek Dep. 134:15-17, 241:6-18; ECF No. 83-27, BBU Ex. 77:  BBU 1217) are insufficient to establish that V. Zahourek (as ZSI's representative) *knew* that BBU had ceased using the Introduction Mark.  That is, V. Zahourek understood that BBU was "going to" cease all use of the Introduction Mark.  (ECF No. 82-2, BBU Ex. 2:  V. Zahourek Dep. 241:6-18.)  The letter does not evidence that ZSI knew that BBU had in fact (as opposed to its plan) ceased using the Introduction Mark at the time of the application.  (*See generally* ECF No. 83-27, BBU Ex. 77:  BBU 1217.)

The Court leaves to the jury as to whether ZSI's registration of the Introduction Mark is void ab initio because of a lack of use.

(2)    Whether ZSI Procured Registration of the Introduction Mark by Fraud

Defendant argues that ZSI's registration of the Introduction Mark was procured by fraud and as such is subject to use by it, 15 U.S.C. § 1115(b)(1).  (ECF No. 81 at 8-10.)  Fraud in

22

procuring a trademark registration occurs when the applicant knowingly makes inaccurate statements with the intent to mislead the USPTO into issuing a trademark registration. *In re Bose Corp.*, 580 F.3d 1240, 1243 (Fed. Cir. 2009). And determining whether the alleged fraud was committed with scienter depends on evaluating the credibility of evidence which makes it normally a question of fact for which resolution at summary judgment is not generally appropriate. *See Copelands' Enters., Inc. v. CNV, Inc.*, 945 F.2d 1563, 1567 (Fed. Cir. 1991) (citations omitted).

Here, there exists a genuine factual dispute as to ZSI's knowledge as to whether BBU was using the Introduction Mark. Defendant's citations to the record (ECF No. 82-2, BBU Ex 2: V. Zahourek Dep. 134:15-17, 241:6-18; ECF No. 83-27, BBU Ex. 77: BBU 1217) are insufficient to establish that V. Zahourek (as ZSI's representative) *knew* that BBU had ceased using the Introduction Mark. That is, V. Zahourek understood that BBU was "going to" cease all use of the Introduction Mark. (ECF No. 82-2, BBU Ex. 2: V. Zahourek Dep. 241:6-18.) The letter does not evidence that ZSI knew that BBU had in fact (as opposed to its plan) ceased using the Introduction Mark at the time ZSI filed the application. (*See generally* ECF No. 83-27, BBU Ex. 77: BBU 1217.)

The Court leaves the factual determination for a jury as to whether ZSI engaged in fraud in procuring the Introduction Mark registration.

> (3) Whether Plaintiffs are Equitably Estopped from Asserting Defendant Engaged in Unauthorized Use of the Introduction Mark

Defendant argues that from "2004 until approximately September 2011" ZSI did not complain of any unauthorized use with respect to the Introduction Mark and Plaintiffs are estopped from arguing trademark infringement pursuant to 15 U.S.C. § 1115(b)(9). (ECF No. 81

at 10.)  Plaintiffs fail to respond to Defendant's estoppel argument.  (*See generally* ECF No. 94.)

Equitable estoppel "prevents a trademark owner from bringing an infringement action when the

owner has acted or failed to act in such a manner and under such circumstances that indicated it

was not going to enforce its rights with respect to the trademark." *Prince Lionheart, Inc. v. Halo*

*Innovations, Inc.*, Case No. 06-CV-00324-WDM-KLM, 2008 WL 878985, at *5 (D. Colo. Mar.

28, 2008) (citations omitted).  Defendant's cited factual support (ECF No. 82-25, BBU Ex. 25:

ZSI 0044; ECF No. 83-9, BBU Ex. 59; ECF No. 82-2, BBU Ex. 2:  V. Zahourek Dep. 129:10-

25, 131:1-10), however, demonstrates that Plaintiffs did complain about certain BBU usage of

the Introduction Mark.

      The Court denies Defendant's MSJ to the extent it seeks judgment against Plaintiffs'

trademark infringement claim under an estoppel theory as to the Introduction Mark.

c.    *Anatomy in Clay*

      First, Zahourek is the registrant of the Clay Mark and, by contract, has the sole right to

bring an action for infringement of the Clay Mark (ECF No. 84-22, BBU Ex. 122:  ZSI 5997-

5999).  Therefore, the Court grants Defendant's MSJ to the extent it seeks to bar ZSI from

asserting a trademark infringement claim as to the Clay Mark.

(1)    Whether Nominative Fair Use Permits BBU to Use the<br>Clay Mark

      Defendant moves for judgment on Plaintiffs' trademark infringement claim with respect

to the Clay Mark on the ground that its use of this mark, as a matter of law, is a nominative fair

use permitted by the Lanham Act, 15 U.S.C. § 1115(b)(4).  (ECF No. 81 at 10.)

      The Lanham Act prohibits the unauthorized use or misleading representation of "any

word, term, name, symbol, or device" in a way that "is likely to cause confusion, or to cause

mistake, or to deceive" in connection with any good or service. 15 U.S.C. § 1125(a)(1)(A).

24

"Confusion occurs when consumers make an incorrect mental association between the involved commercial products or their producers" or "when a mark is likely to deceive purchasers or users as to the source, endorsement, affiliation, or sponsorship of a product." *John Allan Co. v. Craig Allen Co. L.L.C.*, 540 F.3d 1133, 1138 (10th Cir. 2008) (internal quotation and citation omitted). Whether the use of a mark will result in likelihood of confusion within the meaning of the Lanham Act is a question of fact. *Id.* To determine whether a likelihood of confusion exists in a trademark infringement case, the Court engages in a multi-factor analysis. *Health Grades, Inc. v. Robert Wood Johnson Univ. Hosp., Inc.*, 634 F. Supp. 2d 1226, 1239 (D. Colo. 2009). In the Tenth Circuit, the following non-exhaustive factors are considered: "(1) the degree of similarity between the marks; (2) the intent of the alleged infringer in adopting the mark; (3) evidence of actual confusion; (4) similarity of products and manner of marketing; (5) the degree of care likely to be exercised by purchasers; and (6) the strength or weakness of the marks." *John Allan*, 540 F.3d at 1138 (quoting *Sally Beauty Co., Inc. v. Beautyco, Inc.*, 304 F.3d 964, 972 (10th Cir. 2002)). "No one of these factors is dispositive, and 'the final determination of likelihood of confusion must be based on consideration of all relevant factors.'" *Health Grades*, 634 F. Supp. 2d at 1239 (citing *John Allan*, 540 F.3d at 1138). In all cases, "[t]he party alleging infringement has the burden of proving likelihood of confusion." *John Allan*, 540 F.3d at 1138; *see KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc.*, 543 U.S. 111, 118 (2004). The District of Colorado has previously held that "[t]he defendant does not bear the burden of proving nominative fair use, and nominative use of a mark is not an affirmative defense to liability." *Health Grades*, 634 F. Supp. 2d at 1242.

Under the Tenth Circuit's law, whether Defendant's use of ZSI's Clay Mark is likely to confuse the public is a question of fact. *See John Allan*, 540 F.3d at 1138. Nominative fair use

can be decided as a matter of law on a motion for summary judgment.  *See Health Grades*, 634 F. Supp. 2d at 1242 (citing *Playboy Enters., Inc. v. Welles*, 279 F.3d 796, 801-02 (9th Cir. 2002) and *New Kids on the Block v. News Am. Publ'g, Inc.*, 971 F.2d 302, 309 (9th Cir. 1992)).

Plaintiffs do not engage in the non-exhaustive multifactor analysis.  (*See generally* ECF No. 94.)  Plaintiffs bear the burden of proving consumer confusion.  *See KP Permanent Make-Up*, 543 U.S. at 118.  Confusingly, Plaintiffs concede that "[t]he exact uses by BBU of the [Clay] Mark . . . [is] not being asserted as trademark infringement as those uses were under license from ZSI." (ECF No. 94 at 6.)  At one point, however, Plaintiffs do assert that "consumers confuse offerings through the Plaintiffs with those offered by B[B]U. . . ."  (ECF No. 94 at 23.)  Plaintiffs cite to a nine page exhibit without pinpoint citation.  (ECF No. 94 at 23 (citing ECF No. 98, Pls.' Ex. L).)  However, evidence of actual confusion is but one factor.  Plaintiffs fail to address the remaining non-exhaustive list of factors (*see generally* ECF No. 94) and it is not the Court's obligation to create legal arguments for them.  Defendants, likewise, fail to address Plaintiffs' response arguing consumer confusion.  (*See generally* ECF No. 117.)

At this point, although Plaintiffs haphazardly address and produce a modicum of evidence of actual consumer confusion as to the Clay Mark (ECF No. 98, Pls.' Ex. L:  ZSI 734-737), Defendant fails to rebut Plaintiffs' argument, and thus, the Court leaves for the jury the issue as to whether Defendant's use of the Clay Mark constitutes nominative fair use.

      (2)      Whether Plaintiffs are Equitably Estopped from Asserting Defendant Engaged in Unauthorized Use of the Clay Mark

Defendant argues that from "2004 until approximately September 2011" ZSI did not complain of any unauthorized use with respect to the Clay Mark and Plaintiffs are estopped from arguing trademark infringement pursuant to 15 U.S.C. § 1115(b)(9).  (ECF No. 81 at 10.)

Plaintiffs fail to respond to Defendant's estoppel argument.  (*See generally* ECF No. 94.)

Equitable estoppel "prevents a trademark owner from bringing an infringement action when the

owner has acted or failed to act in such a manner and under such circumstances that indicated it

was not going to enforce its rights with respect to the trademark." *Prince Lionheart*, Case No.

06-CV-00324-WDM-KLM, 2008 WL 878985, at *5 (citations omitted).  Defendant's cited

factual support (ECF No. 82-25, BBU Ex. 25:  ZSI 0044; ECF No. 83-9, BBU Ex. 59; ECF No.

82-2, BBU Ex. 2:  V. Zahourek Dep. 129:10-25, 131:1-10), however, demonstrates that Plaintiffs

did complain about certain BBU usage of the Clay Mark.

The Court denies Defendant's MSJ to the extent it seeks judgment against Zahourek's

trademark infringement claim under an estoppel theory as to the Clay Mark.

### 2.   Copyright Claim[12,13]

Zahourek claims that Defendant has infringed his "copyrighted anatomy models and

rights through the unauthorized display of such models and derivative works made therefrom on

a website." (ECF No. 49 ¶ 3.)  Zahourek is referring to the Student 1 Maniken® for which he

has received a copyright[14].  (ECF No. 94 at 14.)  To prevail on his copyright infringement claim,

Zahourek must establish that he (1) possesses a valid copyright; and (2) Defendant copied

protectable elements of the work.  *See Country Kids 'N City Slicks, Inc. v. Sheen*, 77 F.3d 1280,

1284 (10th Cir. 1996) (citations omitted).  Defendant argues that Zahourek cannot establish

either element.  (ECF No. 81 at 19.)  Because the Court determines that Zahourek does not

---

[12] Because Zahourek is the owner of the copyright (ECF No. 118 ¶ 122), he has standing to bring the copyright claim (ECF No. 49 ¶¶ 53-60).  The parties do not brief whether ZSI is a beneficial owner with standing to sue. *See, e.g., Righthaven LLC v. Wolf*, 813 F. Supp. 2d 1265, 1271 (D. Colo. 2011).
[13] Defendant argues that Maniken® is a "system" to which copyright protection does not extend pursuant to 17 U.S.C. § 102(b).  (ECF No. 81 at 19.)  The Court does not reach this issue because it is the Maniken® model which is at issue in Zahourek's claim and not the Anatomy in Clay Learning System®.  (ECF No. 94 at 14)
[14] At the hearing, Plaintiffs suggested that parts of the Student 1 Maniken® remained the same across subsequent models bearing their own copyrights.  To the extent that the suggestion is that photographs of Student 1 Maniken® containing these "cross model" parts infringe all copyrights of models containing such parts, the argument is without authority and rejected.

possess a valid copyright, the Court does not reach the issue as to whether Defendant copied

protectable elements of the Maniken®.  The Court finds Defendant is entitled to judgment in its

favor and against Zahourek on Zahourek's copyright claim (ECF No. 49 ¶¶ 53-60).

a.    *Whether Zahourek Possesses a Valid Copyright*

The central issue as to whether Zahourek possesses a valid copyright is whether the

Maniken® is subject to copyright protection.  Two provisions contained in 17 U.S.C. § 101 are

at issue.  The description of pictorial, graphic, and sculptural works provides:

> "Pictorial, graphic, and sculptural works" include two-dimensional and three-dimensional works of fine, graphic, and applied art, photographs, prints and art reproductions, amps, globes, charts, diagrams, models, and technical drawings, including architectural plans.  Such works shall include works of artistic craftsmanship insofar as their form but not their mechanical or utilitarian aspects are concerned; the design of a *useful article*, as defined in this section, shall be considered a pictorial, graphic, or sculptural work *only if, and only to the extent that, such design incorporates pictorial, graphic, or sculptural features that can be identified separately from, and are capable of existing independently of, the utilitarian aspects of the article*.

The definition section further provides that "[a] 'useful article' is an article having an intrinsic

utilitarian function that is not merely to portray the appearance of the article or to convey

information.  An article that is normally a part of a useful article is considered a 'useful article.'"

17 U.S.C. § 101.

(1)    Usefulness

When Zahourek designed the first Maniken®, his intent was to make a three-dimensional

model that would be usable to study on by using clay and strings or other representation of

anatomy.  (ECF No. 82-1, BBU Ex. 1:  Zahourek Dep. 31:6-13, 33:17-18, 40:2-16, 47:6-8,

47:24-25, 48:1-6.)  Maniken® is an interactive learning tool which requires the user to shape

muscles of clay and attach them to the model.  (ECF No. 84-4, BBU Ex. 104:  ZSI 0873.)  The

Maniken® is a useful model of skeletal ideas whose overriding intention was to provide a

28

meaningful armature upon which one could explore muscular ideas.  (ECF No. 84-7, BBU Ex. 107, ZSI 3194.)  ZSI sells Manikens®, including the Student 1 Maniken® as part of a kit that includes hardware for assembly, a basic tool set, a package of reusable clay, and the Anatomy in Clay Learning Activities booklet.  (ECF No. 84-10, BBU Ex. 110:  ZSI 1668-1693; ECF No. 84-14, BBU Ex. 114:  BBU 4357; ECF No. 84-17, BBU Ex. 117:  ZSI 1642, 1658.)  The Maniken® is 40% of life-size and stands in the standard anatomical pose.  (ECF No. 84-1, BBU Ex. 101:  ZSI 1629, 1639, 4357.)  Over the years, Zahourek made changes in the Mainken® to make it more life-like, to produce more zoological ideas into it and to make a model that was more life-like.  (ECF No. 82-1, BBU Ex. 1:  Zahourek Dep. 42:11-19, 42:20-24, 192:1-5.)

Zahourek responds that the Maniken® is art because it has been displayed as such.  (ECF No. 94 at 15 (citing ECF No. 98-2, Pls.' Ex. N).)  In *Superior Form Builders, Inc. v. Dan Chase Taxidermy Supply Co.*, 74 F.3d 488 (4th Cir. 1996), the court explained "an animal sculpture, even if realistic, is copyrightable as long as the work represents the author's *creative effort*." *Id*. at 492 (citation omitted and emphasis added).  In this matter, the undisputed material facts show that Zahourek created the Maniken® for its utilitarian features.  Zahourek's after-the-fact attempt to recast his Maniken® as an artistic endeavor finds no support in his contemporaneous creation. The Maniken® serves utilitarian ends.  The Maniken® has an intrinsic utilitarian function that is merely to portray the appearance of a life-like form.  Further, this case is distinguishable from *Superior Form Builders*, 74 F.3d at 493, because in this matter Zahourek has failed to adduce evidence that he formed his Maniken® sculptures "from scratch" and therefore there is no originality in each Maniken®.  Rather, this case is more similar to the mannequins at issue in *Carol Barnhart Inc. v. Economy Cover Corp.*, 773 F.2d 411, 414-15 (2d Cir. 1985), whose forms

were "concededly useful articles."  The evidence presented would not permit a reasonable jury to conclude that Maniken® has no utilitarian value for learning anatomy.

(2)      Separability

A useful article falls within the definition of pictorial, graphic, or sculptural works "only if, and only to the extent that such design incorporates pictorial, graphic, or sculptural features that can be identified separately from, and are capable of existing independently of, the utilitarian aspects of the article."[15]  17 U.S.C. § 101.  The goal of this language is to distinguish creative works that enjoy copyright protection from industrial design that do not.  *Pivot Point Int'l, Inc. v. Charlene Prods., Inc.*, 372 F.3d 913, 921 (7th Cir. 2004) (citation omitted).  The Seventh Circuit Court of Appeals, in *Pivot Point Int'l*, 372 F.3d at 920-32, engaged in a thorough statutory analysis of the separability issue—including analyzing other Circuit Court of Appeals' decisions. The Court agrees with the Seventh Circuit's analysis and incorporates it here.  Specifically, the Court agrees that Congress intended the two operative phrases—"can be identified separately from" and "are capable of existing independently of"— to state a "single, integrated standard to determine when there is sufficient separateness between the utilitarian and artistic aspects of a work to justify copyright protection."  *Pivot Point Int'l*, 372 F.3d at 921.  As the Seventh Circuit

---

[15] The Seventh Circuit Court of Appeals has noted that "prior to the addition of this language in the 1976 Act, Congress had not explicitly authorized the Copyright Office to register 'useful articles.'  Indeed, when Congress first extended copyright protection to three-dimensional works of art in 1870, copyright protection was limited to objects of fine art; objects of applied art still were not protected.  *See* Paul Goldstein, 1 *Copyright* § 2.5.3 at 2:58 (2d ed. 2004).  This changed with the adoption of the Copyright Act of 1909 ("1909 Act"); Professor Goldstein explains:
> The 1909 Act, which continued protection for three-dimensional works of art, dropped the requirement that constitute fine art and thus opened the door to protection of useful works of art. In 1948, the Copyright Office broadened the scope of protection for three-dimensional works of art to cover "works of artistic craftsmanship insofar as their form but not their utilitarian aspects are concerned."  The United States Supreme Court upheld this interpretation in *Mazer v. Stein*, [347 U.S. 201, 213 (1954)], holding that the fact that statuettes in issue were intended for use in articles of manufacture—electric lamp bases—did not bar them from copyright.  Five years later, in 1959, the Copyright Office promulgated a rule that if "the sole intrinsic function of an article is its utility, the fact that the work is unique and attractively shaped will not qualify it as a work of art."  The regulation did, however, permit registration of features of a utilitarian article that "can be identified separately and are capable of existing independently as a work of art."

*Id*. (quoting 37 C.F.R. § 207.8(a) (1949) and 37 C.F.R. § 202.10(c) (1959); footnotes omitted). *Pivot Point Int'l*, 372 F.3d at 920 n.6.

noted, "[i]t seems to be common ground . . . among the courts and commentators, that the protection of the copyright statute also can be secured when a conceptual separability exists between the material sought to be copyrighted and the utilitarian design which that material is incorporated." *Pivot Point Int'l*, 372 F.3d at 922. The Seventh Circuit held that "[c]onceptual separability exists . . . when the artistic aspects of an article can be 'conceptualized as existing independently of their utilitarian function.'" *Pivot Point Int'l*, 372 F.3d at 931 (quoting *Carol Barnhart*, 773 F.2d at 418). "This independence is necessarily informed by 'whether the design elements can be identified as reflecting the designer's artistic judgment exercised independently of functional influences.'" *Pivot Point Int'l*, 372 F.3d at 931 (quoting *Brandir Int'l, Inc. v. Cascade Pac. Lumber Co.*, 834 F.2d 1142, 1145 (2d Cir. 1987)). "If the elements do reflect the independent, artistic judgment of the designer, conceptual separability exists." *Pivot Point Int'l*, 372 F.3d at 931. "Conversely, when the design of a useful article is 'as much the result of utilitarian pressures as aesthetic choices,' the useful and aesthetic elements are not conceptually separable." *Pivot Point Int'l*, 372 F.3d at 931 (quoting *Brandir Int'l*, 834 F.3d at 1147).

In *Pivot Point Int'l*, the Seventh Circuit found that the "Mara" mannequin is entitled to copyright protection because it was "not difficult to conceptualize a human face, independent of all of Mara's specific facial features, *i.e.*, the shape of the eye, the upturned nose, the angular cheek and jaw structure, that would serve the utilitarian functions of a hair stand and, if proven, of a makeup model." 372 F.3d at 931. The Seventh Circuit found that Mara "can be conceptualized as existing independent from its use in hair display or make-up training because it is the product of [the designer's] artistic judgment." *Pivot Point Int'l*, 372 F.3d at 931. Specifically, when the designer was approached "about creating the Mara sculpture, [he was not provided] with specific dimensions or measurements; indeed, there is no evidence that [the

designer's] artistic judgment was constrained by functional considerations." *Pivot Point Int'l*, 372 F.3d at 931.  In contrast, in *Carol Barnhart*, the Second Circuit determined that "[a]ll the forms, which are otherwise life-like and anatomically accurate, have hollow backs designed to hold excess fabric when the garment is fitted onto the form" were included in the design for purely functional reasons and thus, inseparable.  773 F.2d at 412, 418.

The facts of this case are more similar to the facts in *Carol Barnhart* than those at issue in *Pivot Point Int'l*.  In this matter, Zahourek fails to create a dispute with respect to the material facts that the Maniken® was designed for anatomically-functional reasons not independent from his artistic judgment.  (ECF No. 82-1, BBU Ex. 1:  Zahourek Dep. 34:3-12; 34:22-25; 35:1, 42:11-19, 42:20-24, 44:3-9, 49:1-4, 192:1-5; ECF No. 84-1, BBU Ex. 101:  ZSI 1629, 1639, 4357; ECF No. 84-4, BBU Ex. 104:  ZSI 0873; ECF No. 84-5, BBU Ex. 105:  ZSI 0938; ECF No. 84-6, BBU Ex. 106:  ZSI 0940; ECF No. 84-7, BBU Ex. 107:  ZSI 3193, 3194, 3198, 3195 3196, 3197; ECF No. 84-11, BBU Ex. 111:  ZSI 5028-5029; ECF No. 84-12, BBU Ex. 112:  ZSI 5152-5153; ECF No. 84-13, BBU Ex. 113:  ZSI 4886; ECF No. 118-5, BBU Ex. 131:  ZSI 4894; ECF No. 82-4, BBU Ex. 4:  St. John Dep. 158:8-17; ECF No. 84-15, BBU Ex. 115:  BBU 4358; ECF No. 84-14:  BBU Ex. 114:  BBU 4356; ECF No. 84-17, BBU Ex. 117:  ZSI 1625.)[16]

---

[16] Plaintiffs argue that the "nose, ears, eyes, shape of the skull, and many more" constitute "design elements" that "reflect the artistic judgment [Zahourek] exercised independently of functional influences."  (ECF No. 94 at 16.) Plaintiffs argument is not supported the factual record as the testimony cited shows that "having an ear [] as opposed to just a hole . . . is going to make it easier to know where the rest of the muscles are supposed to go.  That's the function of that."  (ECF No. 98-2, Pls.' Ex. N.:  Zahourek Dep. 160:12-22.)

3.      Breach of Contract Claim[17],[18]

Between January 1, 2005 and October 9, 2008, ZSI issued 39 invoices to BBU.  (ECF

No. 83-36, BBU Ex. 86:  ZSI 1434-1436.)  ZSI issued zero invoices to BBU in 2009, 6 invoices

in 2010, 3 in 2011, and 3 in 2012.  (ECF No. 83-36, BBU Ex. 86:  ZSI 1434-1436.)  From 2010

through 2013, ZSI's invoices contained print at the bottom stating that "Zahourek Systems, Inc.

sells products and services only with associated Product License rights.  Before you can purchase

the item(s), you must read and accept the terms for the associated Product License found at

www.anatomyinclay.com/licenserights.html.  Payment for the item(s) represents that you have

read, understood, and accept the Product License [("PLA")] terms."  (ECF No. 83-38, BBU Ex.

88:  ZSI 1376, 1483.)

ZSI implemented the first PLA in April 2009.  (ECF No. 83-2, BBU Ex. 2:  V. Zahourek

Dep. 59:24-25; ECF No. 83-39, BBU Ex. 89:  4081-4083, 4084-4086, 4087-4089, 4090-4092.)

In September 2011, ZSI posted on its website a revised version of the PLA dated June 1, 2011

("First Revised PLA").  (ECF No. 118 ¶ 115; ECF No. 83-40, BBU Ex. 90:  BBU 4023-4024,

4164-4165.)  On or about July 23, 2013, ZSI posted another revised version of the PLA ("Second

Revised PLA").  (ECF No. 118 ¶ 116; ECF No. 83-41, BBU Ex. 91:  BBU 4176-4177.)

For the following reasons, the Court denies Defendant's MSJ as it relates to ZSI's breach

of contract claim (ECF No. 49 ¶¶ 35-43).

---

[17] Because the PLA is between ZSI and Defendant, Zahourek has no breach of contract claim.  To the extent
Zahourek claims relief for breach of contract, Defendant is entitled to judgment against Zahourek.  *See Kowalski v.
Tesmer*, 543 U.S. 125, 129 (2004) ("[A] party 'generally must assert his own legal rights and interests, and cannot
rest his claim to relief on the legal rights or interests of third parties.'")
[18] The parties do not argue what state law applies to Plaintiffs' breach of contract claim (ECF No. 49 ¶¶ 35-43). The
PLA provides that it is to be construed in accordance with Colorado law.  (ECF No. 83-39, BBU Ex. 89:  BBU
4083.)  Therefore, the Court uses Colorado law.

a.      *Whether the PLA is an Illusory Contract*

Defendant argues that the PLA is an illusory contract and therefore unenforceable.  (ECF

No. 81 at 11-12.)  Defendant argues that the only right granted to it via the PLA is the right to

use certain trademarks.  (ECF No. 81 at 11 (citation omitted).)  But this right is "rescindable" by

ZSI without notice at ZSI's sole discretion.  (ECF No. 81 at 11 (citation omitted).)  Plaintiffs

respond that there was mutual consideration by both parties, therefore, the PLA is not illusory.

(ECF No. 94 at 8.)

"[A] contract requires a bargained for benefit or detriment, 'words of promise which by

their terms make performance entirely optional with the 'promisor'" cannot serve as

consideration for an enforceable agreement, and any purported 'agreement' would be illusory."

*Vernon v. Qwest Commc'ns Int'l, Inc.*, 857 F. Supp. 2d 1135, 1153-54 (D. Colo. 2012) (applying

Colorado law).  In Colorado, however, "every contractual obligation need not be mutual as long

as each party has provided some consideration to the contract."  *Vernon*, 857 F. Supp. 2d at 1154

(citing *Rains v. Found. Health Sys. Life & Health*, 23 P.3d 1249, 1255 (Colo. App. 2001)).  A

contract provision can be enforceable even if that particular clause lacks mutuality.  *Vernon*, 857

F. Supp. 2d at 1155.

A reasonable jury could find the parties each provided some consideration to the PLA.

Specifically, from 2010 through 2013, ZSI informed BBU that it sold its products and services

"only with associated Product License rights.  [And that] [b]efore [BBU could] purchase the

item(s), [it] must read and accept the terms for the associated Product License found at

www.anatomyinclay.com/licenserights.html.  Payment for the item(s) represent[ed] that [BBU

had] read, understood, and accept[ed] the Product License terms."  (ECF No. 83-38, BBU Ex.

88:  ZSI 1376, 1483; ECF No. 83-39:  BBU Ex. 89:  BBU 4081, 4083, 4084-4086, 4087-4089,

4090-4092; ECF No. 83-40, BBU Ex. 90:  BBU 4023-4024, 4164-4165; ECF No. 83-42, BBU

Ex. 92:  BBU 4093, 4094, 4095, 4096, 4069, 4070, 4178; ECF No. 102, Pls.' Ex. AA:  Baca Aff.

¶ 2; ECF No. 83-42, BBU Ex. 92:  BBU 4093-4096, 4069-4070.)  Further, paragraph 2 of the

PLA acknowledges that BBU owns the products purchased from ZSI.  (ECF No. 83-39, BBU

Ex. 89:  BBU 4081.)  That is ZSI transferred ownership of the product pursuant to the PLA.  In

return, BBU paid for the product.  (ECF No. 83-38, BBU Ex. 88:  ZSI 1376, 1483; ECF No.83-

43, BBU Ex. 93:  ZSI 1476-1482, 1484-1486.)  Therefore, a reasonable jury could conclude that

both parties gave consideration to the PLA.

> b.     *Whether there was a Meeting of the Minds with Respect to the PLA*

Defendant argues notice of the PLA was ineffective and thus, it did not assent to the

terms of the PLA.  (ECF No. 81 at 13.)  Plaintiffs respond that notice was effective and

Defendant assented to the PLA's terms.  (ECF No. 94 at 9-10.)

As stated previously, ZSI provided notice of the PLA to BBU via its invoices[19]

subsequent to BBU's purchases of ZSI products.  A reasonable jury could find that BBU

assented to the PLA's terms by retaining possession of the purchased product subsequent to

notice of the PLA in the invoice.  (*See* ECF No. 83-39, BBU Ex. 89:  BBU 4081 ("By

purchasing or using any of Zahourek's products and services, you accept the terms of [the PLA]

as a legally binding document without any other conditions or declarations.  If you do not agree

with these terms, You cannot purchase or use the products and your purchase price will be

refunded less repackaging costs.").)

---

[19] The Court recognizes Defendant's argument that ZSI's website did not function properly during parts of the relevant time period to provide adequate notice of the PLA.  (*See* ECF No. 81 at 13.)  Again, there are disputed material facts, as stated previously, with respect to whether on all dates relevant that ZSI's website did not function properly to provide notice of the PLA.

c.     *Whether the PLA Applies Retroactively to Manikens®*

Defendant argues that because *Balanced Body, Inc.*[20] disclaimed the First Revised PLA

(ECF No. 117 at 6-7 (citing ECF No. 83-27, BBU Ex. 77:  BBU 1217)) in October 2011, its

subsequent ZSI product purchases are not subject to any of the PLA (ECF No. 81 at 1; ECF No.

117 at 6-7).  Plaintiffs argue that Defendant's purchases are subject to the original PLA and

Balanced Body, Inc.'s disclaimer has no effect.  (ECF No. 94 at 10-11.)  The Court finds that

resolution of this argument is not appropriate for summary judgment.  Defendant purchased ZSI

products when the First Revised PLA was in effect, which contains a statement that it supersedes

prior versions.  (ECF No. 83-38, BBU Ex. 88:  ZSI: 1364, 1367, 1368, 1371, 1372, 1374, 1376

1378, 1380, 1383, 1388, 1483, 1393, 1399, 1403, 1407; ECF No. 83-40, BBU Ex. 90:  BBU

4023-4024.)  There are genuine material factual disputes as to Balanced Body Inc.'s disclaimer

and the retroactive application of the First Revised PLA.  The Court finds that a reasonable jury

could conclude that ZSI gave consideration to Defendant with respect to selling a product and

that BBU gave consideration to Defendant with respect to paying for the product such that the

parties entered into a new PLA which supersedes the prior PLA.

d.     *Whether the Copyright Act Preempts Part of ZSI's Breach of Contract Claims*

Defendant argues that the Copyright Act preempts ZSI's contract claim related to

Defendant's creation and display of photographs (ECF No. 49 ¶ 42).  (ECF No. 81 at 15-16.)

ZSI owns no copyright in the Maniken®.  (*See* ECF No. 118 ¶ 122.)  17 U.S.C. § 204(a) requires

the grant of exclusive rights in copyrights to be in writing.  Defendant fails to provide the Court

with a pinpoint citation to support its argument that ZSI "has only an oral license from

[Zahourek]."  (ECF No. 117 at 7.)  Equivalently, Plaintiffs state, without pinpoint record citation,

---

[20] BBU is the party to this lawsuit.  It is not clear how a non-party to the PLA, Balanced Body Inc., could waive BBU's obligations.

that "[Zahourek] has licensed to ZSI rights to use and sublicense [Zahourek's] copyrights." (ECF No. 94 at 12.)  Because Defendant has failed to provide the Court with a record cite indicating that ZSI does not have standing to assert a copyright claim on the basis of a written license, the Court cannot determine whether the Copyright Act preempts ZSI's breach of contract claim.

> e.      *Whether the PLA Applies to Defendant's Use of the Ai3D Mark*

Defendant argues that to "construe any PLA as extinguishing [Defendant's] lawful right to the [Ai3D] Mark would be unconscionable."  (ECF No. 81 at 17.)  Defendant does not provide authority that justifies it is entitled to judgment as a matter of law on ZSI's breach of contract claim.  (*See generally* ECF No. 81.)  Specifically, the PLA, by its terms, gave ZSI the right to change the PLA's terms by adding to the list of claimed trademarks.  (ECF No. 83-39, BBU Ex. 89:  BBU 4081-4082.)  As stated previously, the Court finds that a reasonable jury could conclude, under the PLA, that ZSI gave consideration to Defendant with respect to selling a product and that BBU gave consideration to Defendant with respect to paying for the product. Therefore, because of the existence of factual disputes, whether the PLA applies to Defendant's use of the Ai3D Mark is a question for a jury.

> f.      *Whether the PLA Applies to Defendant's Use of the Introduction Mark*

Defendant argues that it is entitled to judgment as a matter of law on ZSI's breach of contract claim related to the Introduction Mark because it used the Introduction Mark in an approved manner; that the revised PLAs cannot apply retroactively; and that it did not use the Introduction Mark in connection with a product.  (ECF No. 81 at 17-18.)  Plaintiffs respond, without record citation, in much the same fashion that it has to Defendant's prior contract arguments.  (*See* ECF No. 94 at 13-14.)  For reasons articulated previously, *i.e.*, because genuine

factual disputes exist as to BBU's purchases under the revised PLAs, the Court finds a reasonable jury could return a verdict for either party.

### 4.    Unfair Competition and Misappropriation[21,22]

Defendant argues that "[i]t is impossible for [it] to respond to the universe of possible claims given [Plaintiffs'] intentionally vague allegations [in the Complaint (ECF No. 49)], but summary judgment is appropriate on at least some of Plaintiffs' possible claims."  (ECF No. 81 at 27-28.)  Therefore, unless addressed otherwise below, the Court denies Defendant's MSJ to the extent it seeks judgment in its favor and against Plaintiffs on their unfair competition and misappropriation claims (ECF No. 49 ¶¶ 61-90).

The Supreme Court has held that states "may protect business in the use of their trademarks, labels, or distinctive dress in the packaging of goods so as to prevent others, by imitating such markings, from misleading purchasers as to the source of the goods."  *Sears, Roebuck & Co. v. Stiffel Co.*, 376 U.S. 225, 232 (1964).  Under Colorado law, "the tort of unfair competition requires, first, that the defendant has copied the plaintiff's products or services or misappropriated plaintiff's name or operations in some regard, and second, that this conduct is likely to deceive or confuse the public because of the difficulties in distinguishing between the plaintiff's and defendant's products and services."  *NetQuote, Inc. v. Byrd*, 504 F. Supp. 2d 1126, 1131 (D. Colo. 2007).  The tort of unfair competition "prohibit[s] unfair misappropriation of a competitor's business values," *Am. Television and Commc'n Corp. v. Manning*, 651 P.2d 440,

---

[21] Plaintiffs' response to Defendant's MSJ with respect to the unfair competition and misappropriation claims (ECF No. 94 at 19-21) is confusing.  Plaintiffs argue for the Court to extend the "economic loss rule."  (ECF No. 94 at 19.)  Plaintiffs, however, fail to show how the economic loss rule applies to this matter.  (*See generally* ECF No. 94.)  Plaintiffs argue that Defendant has committed the "tort of [b]usiness [p]ractice."  (ECF No. 94 at 20.)  Again, Plaintiff fails to show how the tort of business practice applies to this matter.  (*Compare* ECF No. 94 *with* ECF No. 49.)  The Court will not invent legal arguments for Plaintiffs nor cite to applicable parts of the record for them.  *See Cross*, 390 F.3d at 1290; *see also Mitchell*, 218 F.3d at 1199; *see also Dayton Hudson*, 812 F.2d at 1325.

[22] Despite this ruling, Orders entered at the hearing in this matter require Plaintiffs to bring specificity to their unfair competition and misrepresentation claims which are currently akin to amorphous blobs.  And Defendant has been permitted to file a second summary judgment motion upon receipt of such specificity.

445 (Colo. App. 1982), but the prohibition on misappropriating business values does not "expand unfair competition to cover every instance in which an individual capitalizes upon the skill and efforts of another." *Powell Prods., Inc. v. Marks*, 948 F. Supp. 1469, 1476 (D. Colo. 1996).

a.   *ZSI's Claims*

Because Zahourek is the owner of the Clay Mark (*see* ECF No. 118 ¶ 122) and his license agreement with ZSI expressly reserves his right to bring an unfair competition claim related to the Clay Mark (ECF No. 84-22, BBU Ex. 122:  ZSI 5998), Defendant is entitled to judgment in its favor and against ZSI as it relates to an unfair competition claim related to the Clay Mark. *See Kowalski v. Tesmer*, 543 U.S. 125, 129 (2004).  The Court does not understand how the Introduction Mark includes the Clay Mark (*see* ECF No. 81 at 28), and thus denies Defendant's request for judgment in its favor and against ZSI as it relates to an unfair competition related to the Introduction Mark.

Because Zahourek is the owner of the alleged Maniken® copyright (*see* ECF No. 118 ¶ 122), ZSI does not have any claim for unfair competition or misappropriation based on Defendant's creation and use of photographs of the Maniken®.  *See Kowalski*, 543 U.S. at 129.

To prevail on an unfair competition claim under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), "a plaintiff must establish that (1) [his] mark is protectable and (2) the defendant's use of [an identical or similar] mark is likely to cause confusion among consumers." *Donchez v. Coors Brewing Co.*, 392 F.3d 1211, 1215 (10th Cir. 2004) (citations omitted). Because ZSI does not have a valid Ai3D Mark (*see supra* Section III.B.1.a), Defendant is entitled to judgment in its favor and against ZSI with respect to unfair competition as it relates to the Ai3D Mark.

b.     *Zahourek's Claims*

As stated previously, to prevail on an unfair competition claim under Section 43(a) of the

Lanham Act, 15 U.S.C. § 1125(a), "a plaintiff must establish that (1) [his] mark is protectable

and (2) the defendant's use of [an identical or similar] mark is likely to cause confusion among

consumers." *Donchez*, 392 F.3d at 1215 (citations omitted).  Because Zahourek does not have a

valid Ai3D Mark (*see supra* Section III.B.1.a) and is not the registrant of the Ai3D Mark (ECF

No. 83-33, BBU Ex. 83:  BBU 3694-3696), Defendant is entitled to judgment in its favor and

against Zahourek with respect to unfair competition as it relates to the Ai3D Mark.

Defendant is not entitled to judgment on Zahourek's unfair competition and

misappropriation claims based upon Defendant's creation and use of photographs showing

Maniken®.  Genuine disputes of material fact exist with respect to whether Defendant

misappropriated Zahourek's Maniken® model in creating its Build Manual (ECF No. 118 ¶ 200;

ECF No. 84-26, BBU Ex. 126:  ZSI 2553-2638; ECF No. 82-4, BBU Ex. 4, St. John Dep. 24:6-

15, 158:4-7, 21:19-25, 22:1-8, 120:19-25, 121:1-7) and use of the Clay Mark as well as Plaintiffs

have introduced evidence of consumer confusion with respect to the Clay Mark learning system

during which the Maniken® model is used (*see* ECF No. 94 at 23 (citing ECF No. 98, Pls.' Ex.

L)).

5.     Damages

a.     *Whether Theoretical Damages Entitle Defendant to Judgment as a
       Matter of Law*

Defendant argues that "Plaintiffs' damages theories are [] based on 'theoretical

calculations' and 'guesses.'"  (ECF No. 81 at 28.)  Defendant, however, fails to provide the

Court with any applicable legal authority that it is entitled to judgment as a matter of law with

respect to Plaintiffs' damages claims.  (*See generally* ECF No. 81.)  Therefore, the Court denies

judgment in Defendant's favor as to its theoretical damages argument (ECF No. 81 at 29-31).

> b.     *Whether Zahourek's Copyright Claim is Limited by the Applicable Statute of Limitations*

Defendant argues that Zahourek's copyright infringement claim is governed by a three-

year statute of limitations.  (ECF No. 81 at 31.)  The Court agrees.  17 U.S.C. § 507(b).  The

parties dispute, however, whether Defendant can assert this affirmative defense or whether it was

waived by the parties' prior agreement.  (ECF No. 94 at 24.)  Regardless, because the Court has

found that Zahourek does not have a valid copyright in Maniken® (*see supra* Section III.B.2), he

cannot recover any damages under his copyright claim.

## IV.     CONCLUSION

Based on the foregoing, the Court:

(1)     GRANTS, in part, Defendant's MSJ (ECF No. 81), to wit, the Court:

(i)     GRANTS Defendant judgment on Plaintiffs' trademark infringement

claim (ECF No. 49 ¶¶ 44-52) as it pertains to the Ai3D Mark;

(ii)     GRANTS Defendant judgment on Plaintiff ZSI's trademark infringement

claim (ECF No. 49 ¶¶ 44-52) as it pertains to the Clay Mark;

(iii)     GRANTS Defendant judgment on Plaintiffs' copyright infringement claim

(ECF No. 49 ¶¶ 53-60);

(iv)     GRANTS Defendant judgment on Plaintiff Zahourek's breach of contract

claim (ECF No. 49 ¶¶ 35-43);

(v)     GRANTS Defendant judgment on Plaintiff ZSI's unfair competition claim

(ECF No. 49 ¶¶ 61-82) as it pertains to the Clay Mark;

(vi)     GRANTS Defendant judgment on Plaintiff ZSI's unfair competition claim

(ECF No. 49 ¶¶ 61-82) as it pertains to the Maniken®;

    (vii) GRANTS Defendant judgment on Plaintiff ZSI's misappropriation claim (ECF No. 49 ¶¶ 83-90) as it pertains to the Maniken®;

    (viii) GRANTS Defendant judgment on Plaintiffs' unfair competition claim (ECF No. 49 ¶¶ 61-82) as it pertains to the Ai3D Mark;

  (2) DENIES, in part, Defendant's MSJ (ECF No. 81), to wit, the Court:

    (i) DENIES Defendant judgment on Plaintiff ZSI's breach of contract claim (ECF No. 49 ¶¶ 35-43);

    (ii) DENIES Defendant judgment on Plaintiffs' trademark infringement claim (ECF No. 49 ¶¶ 44-52) as it pertains to the Introduction Mark;

    (iii) DENIES Defendant judgment on Plaintiff Zahourek's trademark infringement claim (ECF No. 49 ¶¶ 44-52) as it pertains to the Clay Mark;

    (iv) DENIES Defendant judgment on Plaintiff ZSI's unfair competition claim (ECF No. 49 ¶¶ 61-82) as it pertains to the Introduction Mark;

    (v) DENIES Defendant judgment on Plaintiff Zahourek's unfair competition claim (ECF No. 49 ¶¶ 61-82) as it pertains to the Maniken®;

    (vi) DENIES Defendant judgment on Plaintiff Zahourek's misappropriation claim (ECF No. 49 ¶¶ 83-90) as it pertains to the Maniken®;

    (vii) DENIES Defendant's motion for summary judgment (ECF No. 81) in all other respects as not addressed in this Order;

  (3) GRANTS, in part, Defendant's Motion to Strike (ECF No. 119), to wit, the Court:

    (i) STRIKES from Baca's Affidavit paragraphs (ECF No. 102 ¶¶ 4-12) as well as the attachments labeled 1 and 2 (ECF No. 102 at 5-11); and

(4)     DENIES, in part, Defendant's Motion to Strike (ECF No. 119), to wit, the Court:

(i)     DOES NOT STRIKE from Baca's Affidavit paragraphs (ECF No. 102 ¶¶

1-3).

DATED this 7th day of April, 2016.

BY THE COURT:

_____
RAYMOND P. MOORE
United States District Judge